A07A1719. DANIELS v. BARNES et al.
(658 SE2d 472)

ADAMS, Judge.
Georgia residents Nesbert and Louise Barnes, the paternal grandparents of C. A. B. and D. A. B., petitioned the Superior Court of Chatham County for a modification of their visitation rights to their grandchildren and for an order of contempt. Monica Bailey Daniels, the mother of the children, was personally served with the summons and petition in her home state of Rhode Island where she and her present husband live with the children. In lieu of an answer to the petition, Daniels filed a motion to dismiss on the grounds that the Georgia court lacked personal jurisdiction over her. The trial court disagreed and eventually found Daniels in criminal contempt, ordering, among other things, that Daniels pay a fine of $5,000 and be imprisoned for 200 days. Daniels appeals.

Daniels and her former husband had a daughter born in July 1994 and a son born in June 1996. The Superior Courts of the Eastern Judicial Circuit issued a divorce decree in December 2001 that awarded custody to Daniels and prohibited the father from having contact with the children. The decree states that the father had entered a plea of nolo contendere to one count of child molestation of one of his two children and that he was already on probation for three counts of child molestation and sixteen counts of public indecency with other victims. The decree did not terminate the father's parental rights. The decree also incorporated an earlier order dated August 1, 2000, in which the grandparents were awarded visitation rights to see the children.

On August 28, 2006, the grandparents filed a "Petition for Modification of Custody" and for contempt in the Superior Court of

Chatham County. They alleged that Daniels resided in Rhode Island, that she had already been held in contempt by the same court for failing to adhere to an earlier order from 2001, and that she was in contempt again for additional wilful violation of the grandparents' visitation rights. On October 11, 2006, Daniels was personally served with a copy of the summons and petition at an address in Rhode Island. On October 25, 2006, Daniels filed a motion to dismiss the contempt action on the ground that the court lacked personal jurisdiction over her.

On November 15, 2006, the court held a hearing at which Daniels was not present and denied the motion to dismiss on the ground that under the Uniform Child Custody Jurisdiction and Enforcement Act (the "UCCJEA") the court was not an inconvenient forum for the matter. See OCGA § 19-9-67. The court ordered a temporary modification of visitation rights that required Daniels to fly the children to and from Savannah to visit their grandparents, and required her to facilitate telephone contact with the children. The court also held that based on Daniels's interference with the grandparents' rights on five occasions, Daniels was required to pay the grandparents $2,500, as well as pay their attorney fees.

On December 1, 2006, the grandparents filed another motion for contempt in which they asserted that Daniels failed to send the children to Savannah at the required time, failed to have the children call the grandparents on the required weekly schedule, and failed to make the required payments. On February 2, 2007, the court entered an order in which it found that Daniels had failed to comply with any of its earlier orders and repeatedly disregarded the court's authority and jurisdiction in the matter. It therefore held Daniels in criminal contempt and ordered her to pay $500 for each of ten visitation failures for a total of $5,000. It also ordered that she be imprisoned for twenty days for each of the same ten acts for a total of 200 days incarceration. The court ordered that a warrant be issued for her arrest and that all necessary steps be taken by the Governor of the State of Georgia and/or the Governor of the State of Rhode Island "to arrest, incarcerate and extradite" Daniels so that she may serve the time in the Chatham County jail. The court also held that Daniels was still in civil contempt under earlier orders and that she would remain incarcerated after the 200 days until such time as she purged herself of the contempt as specified in the earlier orders. We granted Daniels's application for a discretionary appeal.

Daniels contends the lower court lacked personal jurisdiction over her for contempt. We will first address the court's jurisdiction of the custody issue and of Daniels, and then address the same issue regarding contempt. *Dyer v. Surratt*, 266 Ga. 220 (466 SE2d 584)

(1996) (trial court's jurisdiction of proceeding to modify custody and action for contempt for violation of divorce decree must be considered separately).

Effective July 1, 2001, Georgia repealed the "Uniform Child Custody Jurisdiction Act" (UCCJA) and enacted the "Uniform Child Custody Jurisdiction and Enforcement Act." Ga. L. 2001, p. 129, § 1. Under the UCCJEA, one basis for a Georgia court's exercise of jurisdiction to make an initial child custody determination[1] is if Georgia is the "home state of the child on the date of the commencement of the proceeding." OCGA § 19-9-61 (a) (1); see also OCGA § 19-9-41 (7) (definition of "home state"). That court then retains "exclusive, continuing jurisdiction [of] the determination" if the first determination was made "consistent with" OCGA § 19-9-61 (or another Code section not applicable here) so long as either the child or a parent resides in the state or either the child, the parents, or a person acting as a parent has a significant connection with Georgia and substantial evidence regarding the child is still available here. OCGA § 19-9-62 (a). Under these circumstances, personal jurisdiction over the parties for a modification of custody is not required. OCGA § 19-9-61 (c); *Devito v. Devito*, 280 Ga. 367, 369 (3) (628 SE2d 108) (2006).

In this case, there is nothing to suggest that the initial custody determination in 2001 was not made consistent with OCGA § 19-9-61, and the father still lives in Georgia. See, e.g., *Devito v. Devito*, 280 Ga. at 368 (2) (no suggestion that 1997 custody determination was not "consistent with" UCCJEA). Accordingly, as held in *Devito*, the court below had "subject matter jurisdiction over appellee's modification action pursuant to OCGA § 19-9-62[,] and . . . personal jurisdiction over appellant was not necessary in order for it to address the requested modification of its [initial] child custody determination." Id. at 369 (3) (2004 modification of 1997 custody determination valid against out-of-state custodial mother who was served pursuant to Georgia Long Arm Statute).

Consistent with the above, Daniels does not challenge the modification of visitation rights that the lower court has ordered. But, as stated above, the court's ability to assert personal jurisdiction over Daniels for contempt is a separate issue.

Prior to the enactment of the UCCJEA, the Supreme Court of Georgia held that under the UCCJA, even though Georgia courts retained jurisdiction to enforce custody provisions against those who move out of state by attachment for contempt, "nevertheless, in order for the court to bind nonresidents by its judgments in personam there

---

[1] Visitation is considered a custody issue under the UCCJEA. OCGA § 19-9-41 (3).

must be *personal service or waiver of personal service* upon such nonresidents." (Citations and punctuation omitted; emphasis in original.) *Ashburn v. Baker*, 256 Ga. 507, 509 (2) (350 SE2d 437) (1986); *Goldstein v. Goldstein*, 229 Ga. App. 862, 864 (2) (494 SE2d 745) (1997). "[A] non-resident parent alleged to be in contempt of the visitation provisions of a Georgia divorce judgment and who was served outside Georgia may divest the court of its power to enforce its judgment by timely asserting a defense of lack of personal jurisdiction." *Dyer v. Surratt*, 266 Ga. at 222 (3).[2]

In *Ashburn*, following a divorce in Chatham County, the custodial mother moved out of state with the couple's child. The father brought a motion for contempt and for modification of custody rights in Chatham County three years later alleging that the mother had violated his visitation rights under the court's earlier orders. *Baker v. Ashburn*, 179 Ga. App. 757 (347 SE2d 660) (1986), aff'd, *Ashburn v. Baker*, 256 Ga. 507. The mother was personally served out of state, but she moved to dismiss the proceedings on the grounds that she was not subject to the jurisdiction of the court and had not been properly served. Id.

On appeal, this Court held that the Georgia Long Arm Statute did not provide authority for obtaining personal jurisdiction for custody issues although it did for alimony, child support, or division of property. *Baker v. Ashburn*, 179 Ga. App. at 758. The applicable wording of that statute had not changed since that time. See OCGA § 9-10-91 (5). This Court also held, and the Supreme Court affirmed, that the UCCJA did not provide the lower court with personal jurisdiction either. Id. The Supreme Court explained that despite the lower court's continuing jurisdiction of the custody dispute, personal jurisdiction for contempt upon the nonresident mother required "personal service or waiver of personal service" and that personal service outside Georgia was invalid. (Citation, punctuation and emphasis omitted.) *Ashburn v. Baker*, 256 Ga. at 509 (2). With regard to the UCCJA, the Supreme Court found that it "[did] not expressly repeal any particular provisions of the Civil Practice Act, nor the existing statutory provisions covering divorce, custody, alimony, and child support procedures." (Citation and punctuation omitted.) Id. Therefore, the court construed the requirements of the UCCJA "in pari materia" with other law and held that the Georgia court did not have personal jurisdiction of the nonresident mother under the UCCJA or the Long Arm Statute. Id.

---

[2] In a concurring opinion, Presiding Justice Fletcher wrote that the same result would obtain under the Parental Kidnapping Prevention Act (28 USC § 1738A).

In this case, the grandparents argue that the UCCJEA has provisions not found in the UCCJA that require a different result than *Ashburn*. The grandparents contend that the UCCJEA includes, in effect, its own long-arm provision. But the provision upon which they rely, OCGA § 19-9-45, was also found in the UCCJA. This argument, therefore, was implicitly rejected in *Ashburn*. Second, unlike the UCCJA, the UCCJEA specifically addresses continuing jurisdiction of custody issues, and the lower court here applied one such provision to determine that it retained jurisdiction over Daniels because a Rhode Island court would not be more convenient. See OCGA §§ 19-9-62; 19-9-67. But like the UCCJA, we find no specific provision in the UCCJEA regarding jurisdiction over contempt nor a repeal of existing statutory provisions covering divorce, custody, alimony, and child support procedures. Like the Supreme Court in *Ashburn*, we conclude that the lower court lacked personal jurisdiction over Daniels for contempt and that personal service outside Georgia was invalid under the circumstances.

The grandparents also contend that Daniels admitted personal jurisdiction when she failed to respond to discovery served with the complaint. But the return of service only shows that Daniels was served with the summons and complaint. Finally, the grandparents argue that we need not reverse the lower court's judgment because under the UCCJEA, the contempt order is enforceable in a Rhode Island court. OCGA §§ 19-9-83; 19-9-85; 19-9-93. But these Code sections only refer to "custody determinations," a defined term that does not include orders for contempt. See OCGA § 19-9-41 (3).

We therefore affirm the custody determination but reverse the contempt order.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 4, 2008 ▪

*Gillen, Parker & Withers, Thomas A. Withers*, for appellant.
*George M. Hubbard III, Esther R. DeCambra*, for appellees.