MOORE, Judge.
L.T., who is the maternal grandmother of M.P.D., appeals from a judgment of the Henry Circuit Court (“the circuit court”) in a dependency action, which had been appealed from the Henry Juvenile Court (“the juvenile court”), to the extent that judgment awarded custody of M.P.D. (“the child”) to J.D., the child’s paternal grandmother (“the paternal grandmother”), and refused to award L.T. (“the maternal grandmother”) visitation with the child. We affirm in part and reverse in part.
This case was appealed from the juvenile court to the circuit court. After a trial was held in the circuit court, the circuit court entered a judgment on April 3, 2012, stating:
“After hearing, the Court finds that the mother of [the child] is deceased and his father is in prison for twenty (20) years for the manslaughter death of the mother. Accordingly, the Court finds that [the child] is dependent.
“The maternal grandmother ... and the paternal grandmother ... each request custody.
“After trial, custody [of the child] is awarded to [the paternal grandmother]. The Court encourages [the paternal grandmother] to permit reasonable visitation by [the maternal grandmother]. However, the Court lacks authority to Order grandparent visitation, D.C.S. v. L.B., [84 So.3d 954] (Ala.[Civ.App.] 2011), [and] Burnett v. Burnett, [88 So.3d 887] (Ala.Civ.App.2011).
“This Order shall become effective at noon on April 14, 2012.”
On April 17, 2012, the maternal grandmother filed a postjudgment motion. On April 25, 2012, the juvenile court rendered an order denying that motion, and, on May 10, 2012, the maternal grandmother appealed to this court. This court remanded the cause to the juvenile court for 14 days for that court to enter, in accordance with Rule 58(c) of the Alabama Rules of Civil Procedure, see Rule 1(A), Ala. R. Juv. P., the order that was rendered on April 25, 2012. The circuit court entered the order denying the postjudgment motion on September 11, 2012.

*654
Facts

At the beginning of the trial, the attorneys represented that the child’s mother had been killed in an automobile collision and that the child’s father, who had been driving the automobile, was serving a prison sentence as a result of the mother’s death.
The maternal grandmother testified that the child had lived with her continuously since he was released from the hospital following his birth, except for one or two months in the year preceding the trial when the juvenile court had ordered that the child live with the paternal grandmother because the maternal grandmother did not have stable housing or a vehicle. The maternal grandmother testified that, when the child first began living with her, she was living in a home in Headland, but she had been evicted from that home because someone had fired a shot in front of her home. She testified that she and the child subsequently had moved to Henry County, which was where they were living when the child’s mother died. She testified that they then had moved to Kinsey, where they lived for almost two years. She testified that they had then moved to Webb because of concerns she had had with regard to mildew in the home in which she and the child had been living. She testified that they had lived in Webb for almost two years and had then moved back to Headland, so she could enroll the child in school there. She testified that, on that occasion, she and the child had lived in Headland for two years, during which time her daughter, “T,” had caused a disturbance. She testified that the Department of Human Resources and the juvenile court had stated that “T” should not live in the same home with the child. She testified that she and the child were evicted from the home in Headland, that they moved in with her brother, and that they subsequently moved in with her sister before they obtained their own place in Headland. She testified that, during that time, “T” visited her and the child, but she did not reside with them. It was during that period, when the maternal grandmother had resided with her sister, that the paternal grandmother had been awarded custody of the child for one or two months.
The maternal grandmother testified that she and the child had been evicted from their home in Headland, that they had moved to Dothan in January 2012, and that she and the child were residing in an apartment in Dothan at the time of the trial. She testified that the child had been required to change schools as a result of that move. She testified that she planned on staying where she was living at the time of the trial.
The maternal grandmother testified that she had not had a vehicle in September 2011 but that she did have one at the time of the trial. She testified that her nephew had transported the child when she did not have transportation and that she was aware that her nephew had had a confrontation with a police officer. She testified that her electricity had been disconnected once in May 2011 but that she had paid her bill and it had been turned back on. She testified that her electricity had not been off longer than one day.
The maternal grandmother also testified that she had been employed by the same employer since June or July 2011 and that she earns $7.95 per hour plus overtime. She testified that she works Mondays, Tuesdays, and Wednesdays, from 2:40 p.m. until 11:00 p.m. She testified that on the weekdays when she works the child stays with her niece a little while and then goes with her sister to her house, which is close to the maternal grandmother’s apartment. The maternal grandmother testified that, *655 after work, she goes to her sister’s house, wakes the child up, and takes him home. She testified that the child wakes up for school at 6:20 a.m. She testified that she is off work on Thursdays and Fridays and works from 5:30 a.m. until 1:00 p.m. on Saturdays and 7:00 a.m. until 12:30 p.m. on Sundays. She testified that one of her sisters watches the child on the weekends while she is at work or that he will go to work with her on Sundays.
The maternal grandmother testified that, at the time of the trial, the child was five years old and was on the “A-B” honor roll. She testified that she had always taken care of and provided for the child. She introduced a note from the child’s teacher, which stated: “[The child] is such an intelligent young man. He is reading friendly (sic). Continue what you are doing. Please continue what you are doing.” She testified that the child had been absent from school eight times from October through January because he had had a virus and a cold. She testified that the child’s aunt “and them” had made up an allegation with regard to a man that “T” was seeing, which had resulted in an investigation by the Department of Human Resources and the child’s having to be interviewed at the Child Advocacy Center.
The maternal grandmother testified that she had never had a problem with the paternal grandmother’s having visitation with the child.
Beverley Miller, a social-service caseworker with the Henry County Department of Human Resources (“DHR”), testified that DHR was concerned with “T” living with the maternal grandmother and the child because “T” has some temperament issues and “verbal issues.” She testified that the most recent home-study report stated that “T” should not live with the maternal grandmother. She testified that there had been a sexual-abuse allegation regarding the child reported to DHR but that she did not know the details of what had happened. Miller testified that her most recent contact with the maternal grandmother had been when she did a home-study update in September 2011. She testified that she had recommended that the maternal grandmother find suitable housing but that there had been no safety or supervision concerns noted; she also testified that the maternal grandmother had subsequently moved to another county. Miller testified that the maternal grandmother’s ability to maintain stable housing had become an issue, but not necessarily with DHR. She testified that she might not have thought the stability of the maternal grandmother’s housing was an issue if it had not been brought up to her by a third party.
The paternal grandmother testified that she had been a teacher for almost 31 years and that she has lived in Albany, Georgia, in the same house for 22 years. She testified that the child had gone to school in Albany for two months when he had lived with her and that the child had been behind the other students in his class in Albany. She testified that she had worked with him and had hired some tutors for him. She also testified that the child had been on a football team and had enjoyed it and that, if she were awarded custody, he could play basketball at the YMCA. She testified that the child had stayed in extended day care for an hour after school until she could pick him up and that she had taken him to school in the mornings. She testified that the child would be able to go on her insurance plan if she were awarded custody.
The paternal grandmother testified that she had been receiving visitation with the child and that on one occasion, when she picked him up, he had been coughing, so she took him to the hospital,'where he was *656 diagnosed with a respiratory infection. The paternal grandmother also testified that the child has ongoing dental problems and a lot of metal caps and cavities. She also testified that the child is extremely overweight but that, in a 2-month period, he had lost weight and had gone from wearing a size 10 husky to an 8 regular.
The paternal grandmother testified that she is concerned about the child’s being moved from one house to another. She also testified that it bothers her that there is no stability for the child. She testified that the child follows a routine when he is at her house.
The paternal grandmother testified that she had had problems with the maternal grandmother’s family making threats and that “T” had knocked her down. She also testified that the maternal grandmother had told the child that she was a bad person. She testified that it bothers her that the child’s maternal relatives are around the child. She testified that the maternal grandmother had not made any threats against her and that she gets along with her. She testified that, if she were awarded custody, she would encourage the child to have a relationship with the maternal grandmother. The paternal grandmother also testified that she wants the child’s father to come live with her when he gets out of prison.

Discussion

On appeal, the maternal grandmother first argues that the circuit court erred in awarding custody of the child to the paternal grandmother instead of to her.
“It is well settled that, after a child has been adjudicated to be dependent, a juvenile court may make any custodial disposition that serves the best interests of the child. See § 12-15-314(a), Ala.Code 1975; and W.T.H. v. M.M.M., 915 So.2d 64, 70 (Ala.Civ.App.2005) (explaining that, under former § 12-15-71, AJa.Code 1975, the predecessor statute to § 12-15-314(a), the ‘best interests’ standard applies during the dispositional phase of a dependency proceeding).
“‘In Ex parte Alabama Department of Human Resources, 682 So.2d 459 (Ala.1996), the Alabama Supreme Court stated the applicable principles of appellate review in the context of a challenge to a juvenile court’s custodial disposition of a dependent child:
“ ‘ “Appellate review is limited in cases where the evidence is presented to the trial court ore tenus. In a child custody case, an appellate court presumes the trial court’s findings to be correct and will not reverse without proof of a clear abuse of discretion or plain error. Reuter v. Neese, 586 So.2d 232 (Ala.Civ.App.1991); J.S. v. D.S., 586 So.2d 944 (Ala.Civ.App.1991). This presumption is especially applicable where the evidence is conflicting. Ex Parte P.G.B., 600 So.2d 259, 261 (Ala.1992). An appellate court will not reverse the trial court’s judgment based on the trial court’s findings of fact unless the findings are so poorly supported by the evidence as to be plainly and palpably wrong. See Ex parte Walters, 580 So.2d 1352 (Ala.1991).”
“ ‘682 So.2d at 460.’
“J.J. v. J.H.W., 27 So.3d 519, 522 (Ala.Civ.App.2008).”
K.F. v. Cleburne Cnty. Dep’t of Human Res., 78 So.3d 983, 988-89 (Ala.Civ.App.2011).
In the present case, we conclude that the circuit court could have properly determined that the child’s best interests would be served by awarding custody of the child to the paternal grandmother in *657 light of the stability she could offer the child and the history of lack of stability present in the maternal grandmother’s household. This lack of stability was evinced by the maternal grandmother’s being evicted on two separate occasions, her having her electricity cut off on one occasion, her not having a vehicle at one point, and her allowing “T” to hve in her home and cause a disturbance. The circuit court could also have determined that the paternal grandmother has more time to devote to caring for the child. Based on the foregoing, we cannot reverse the circuit court’s award of custody to the paternal grandmother.
The maternal grandmother also argues that the circuit court erred as a matter of law in holding that it was prohibited from awarding her visitation because of the Alabama Supreme Court’s holding that the Alabama Grandparent Visitation Act, § 30-3-4.1, Ala.Code 1975, was unconstitutional. We agree. In Ex parte E.R.G., 73 So.3d 634, 650 (Ala.2011), our supreme court held the Alabama Grandparent Visitation Act unconstitutional. It did not, however, state that a grandparent may not be awarded visitation pursuant to other laws, such as those regarding dependency. See, e.g., Ex parte E.R.G., 73 So.3d at 657 (Parker, J., concurring specially) (Pointing out that a trial court may award custody of a child in accordance with the best interests of the ehild when that child is found to be dependent, and stating: “Where both parents are unfit, their parental rights no longer provide the court any guidance, and the best-interests-of-the-child standard applies to balance the claims of competing parties.”); see also Ala.Code 1975, § 12-15-314(a)(4) (“If a child is found to be dependent, the juvenile court may ... [m]ake any ... order as the juvenile court in its discretion shall deem to be for the welfare and best interests of the child.”). In the present case, the child was determined to be dependent. Thus, the circuit court had the authority to make any order it deemed in the best interest of the child, including awarding visitation to the maternal grandmother. Therefore, we reverse the judgment of the circuit court insofar as it held that it could not award the maternal grandmother visitation with the child, and we remand this cause for the circuit court to determine if the best interests of the child would be served by awarding the maternal grandmother visitation with the child.

Conclusion

Based on the foregoing, we affirm the circuit court’s award of custody to the paternal grandmother. We, however, reverse the circuit court’s judgment to the extent it concludes that it was prohibited from awarding the maternal grandmother visitation and we remand this cause for the circuit court to determine whether visitation with the maternal grandmother would serve the best interest of the child and, if it would, to award visitation to the maternal grandmother.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.