# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
July 17, 2014 Session

## PATRICK RICHARD MOORCROFT
### v.
## FLORA TEMPLETON STUART
### v.
## NATALIE TALMAGE MOORCROFT

**Appeal from the Circuit Court for Sumner County**
**No. 2102CV1066     C. L. Rogers, Judge**

---

**No. M2013-02295-COA-R3-CV - Filed January 30, 2015**

---

This case began as an action for legal separation between a husband and wife. The two quickly entered into an agreed temporary parenting plan providing for the custody of their children. However, the children's maternal grandmother intervened, seeking registration and enforcement under the Tennessee Uniform Child Custody Jurisdiction and Enforcement Act of a Kentucky grandparent visitation order. The circuit court granted registration and enforcement of the order. The parents appealed. Because we conclude that the grandmother was required to seek visitation under the Tennessee Grandparent Visitation Statute, we reverse the trial court's decision.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS J., joined.

Nicholas W. Utter, Nashville, Tennessee, for the appellant/plaintiff, Patrick Richard Moorcroft, and appellant/defendant, Natalie Talmage Moorcroft.

Jonathan A. Garner, Springfield, Tennessee, and Peter L. Ostermiller, Louisville, Kentucky, for the appellee/intervening plaintiff, Flora Templeton Stuart.

Robert E. Cooper, Attorney General and Reporter; Joseph F. Whalen, Acting Solicitor General; and Mary B. Ferrara, Assistant Attorney General, Nashville, Tennessee, on behalf of the State of Tennessee.

## OPINION

## I. BACKGROUND AND PROCEDURAL HISTORY

The current Tennessee litigation began with a petition for legal separation filed by one of the Appellants, Patrick Moorcroft ("Father"), against the other, Natalie Moorcroft ("Mother"), on September 12, 2012. Claiming that Mother and Father had both been "bona fide residents of Tennessee for more than six (6) months" prior to the filing of the complaint, Father sought approval of a legal separation agreement and a temporary parenting plan by the Sumner County Circuit Court. The temporary parenting plan was intended to provide "for the adequate care, maintenance and support of the parties' [three] minor children."

The parenting plan designated Father as the primary residential parent and provided Mother visitation with the children from 11:00 p.m. to 7:00 a.m. Monday through Saturday. After conducting a hearing on the matter, the circuit court entered an order on September 20, 2012, granting Mother and Father a separation on the grounds of irreconcilable differences and incorporating the parties' temporary parenting plan into its order.

However, on October 1, 2012, the Appellee, Flora Stuart ("Grandmother"), filed a Motion to Intervene and a Motion to Alter, Amend, or Vacate the circuit court's September 20, 2012 order. Grandmother asserted an interest in the outcome of the proceedings on the basis of a temporary grandparent visitation order, which had been entered by a Kentucky court on September 11, 2012, the day before the filing of the circuit court proceeding. As grounds for her motion to set aside the circuit court's order, Grandmother asserted that Mother and Father had "engaged in fraud, misrepresentation, and/or other misconduct in connection with the entry of the Separation Order."

Grandmother alleged that Mother and Father had entered into a sham separation proceeding in an attempt to undermine visitation rights granted to her by the Circuit Court of Warren County, Kentucky. She also claimed that the parents had attempted to deceive the circuit court by failing to provide it with detailed information regarding the Kentucky proceedings as required by Tennessee Code Annotated §§ 36-4-106 (2014) and 36-6-224(a)(1)-(3) (2014).1 As an exhibit to her Motion to Intervene, Grandmother included a

---

1

  The sole reference to the Kentucky visitation proceeding in the Complaint for Legal Separation was as follows: "[Father] and [Mother] are aware of a pending visitation proceeding filed by the children's maternal grandmother in the State of Kentucky."

petition for grandparent visitation she had filed with the Kentucky court. She also included a copy of the Kentucky court order granting her temporary grandparent visitation rights, along with various other records from the Kentucky litigation.

Father, Mother, and their children resided in Bowling Green, Kentucky, until they moved to Whitehouse, Tennessee, sometime between August 29, 2011, and mid-September 2011. Mother and Grandmother are both attorneys, and Mother worked as an attorney at Grandmother's law firm for several years. Their personal and business relationship began to deteriorate in December 2010, and Mother left Grandmother's firm in March 2011. After leaving the firm, the relationship between the two became even more acrimonious, and Mother eventually forbid Grandmother from contacting the children.

Grandmother, in an effort to resume her relationship with her grandchildren, filed a petition for grandparent visitation with the Kentucky court on August 30, 2011. Mother responded by filing a motion to dismiss the Kentucky visitation proceedings, alleging that she, Father, and the children had moved to Tennessee one day prior, on August 29, 2011, and that the Kentucky court therefore lacked jurisdiction over the proceedings. Mother also argued that the Kentucky court lacked personal jurisdiction over Father because he had not yet been served.

Whether the family had moved to Tennessee before Grandmother's August 30, 2011 petition for visitation became a hotly-contested issue in the Kentucky proceedings. In its May 30, 2012 order denying Mother's motion to dismiss, the Kentucky court found that the family had not relocated to Tennessee prior to the filing of the petition for grandparent visitation; therefore, the Kentucky court asserted jurisdiction over the matter.

The circuit court granted Grandmother's Motion to Intervene and held in abeyance her Motion to Alter, Amend, or Vacate its September 20, 2012 order of legal separation. Grandmother also filed motions to register and enforce the temporary visitation order with the circuit court on November 1, 2012.

Notice of Grandmother's motion seeking registration of the Kentucky court's temporary visitation order was provided to Mother and Father on December 7, 2012, under Tennessee Code Annotated § 36-6-229 (2014). Mother filed an answer to Grandmother's intervening complaint and an objection to registration of the Kentucky order on December 21, 2012. In her answer, Mother argued that the Tennessee version of the Uniform Child Custody Jurisdiction and Enforcement Act ("TUCCJEA"), codified at Tennessee Code Annotated §§ 36-6-201–243 (2014), is not amenable to the registration

2

of foreign grandparent visitation orders and that registration of the Kentucky order under the UCCJEA would be "contrary to the rights afforded Tennessee residents under Article I, Section 8 of the Tennessee Constitution."

Meanwhile, the Kentucky proceedings reached a conclusion, and the court issued its final order on March 4, 2013, granting Grandmother visitation rights. The order, along with various other filings in the record, contains numerous findings of fact and conclusions of law related to the Kentucky proceedings that are also relevant here. For instance, the Kentucky court found that Mother and Father had intentionally avoided service of process in those proceedings. Mother was only served after a Warren County Sheriff's Deputy scaled the fire escape at her law office in order to serve her on September 15, 2011. The Kentucky court found that Father had gone so far as to lie about his identity to a process server in order to evade service. In spite of finally being served on November 2, 2012, Father never appeared before the Kentucky court, and a default judgment was eventually entered against him. Mother also failed to appear at several hearings, despite an order from the Kentucky court compelling her attendance. The Kentucky court also found that Mother had failed to comply with its September 11, 2012 temporary visitation order.[2]

In its final order, the Kentucky court noted that "[w]hen considering a petition for grandparent visitation, the court must presume that a fit parent is making decisions that are in the child's best interest." To overcome that presumption, "[t]he grandparent petitioning for visitation must [prove] with clear and convincing evidence that visitation . . . is in the child's best interest." The Kentucky court found that Mother had admitted in her deposition that it was in the best interest of her children to continue their relationship with Grandmother. Ultimately, the court found that "harm to the children has resulted" through the severance of their relationship with Grandmother.

Following entry of the Kentucky court's order, Grandmother filed a supplemental request with the Tennessee circuit court seeking the registration and enforcement of the final Kentucky order. On March 25, 2013, Father filed an objection to registration of the Kentucky orders and a request for a hearing with the Tennessee circuit court. Mother filed a similar pleading the next day.

After conducting a hearing regarding registration on September 13, 2013, the

---

[2] Mother claimed she was unable to comply with the Kentucky grandparent visitation order because, under the temporary parenting plan from the Tennessee proceedings, Father had custody during the hours the children were awake.

circuit court issued an amended order[3] granting registration of the Kentucky order, "to be enforced with full faith and credit by this Court." The circuit court then worked to set a hearing on the issue of enforcement, which was ultimately held on December 17, 2013.

Mother filed a motion on November 12, 2013, objecting to the enforcement of the Kentucky order and arguing that the TUCCJEA violated her rights under Article I, Section 8 of the Tennessee Constitution insofar as it allowed the registration and enforcement of a foreign grandparent visitation order without a showing of substantial harm to the child. In response to this argument, the Tennessee Attorney General's Office sought leave to intervene under Rule 24.01 of the Tennessee Rules of Civil Procedure, "for the limited purpose of defending [Mother's] challenge to the constitutionality of Tenn. Code Ann. §§ 36-6-237; and 36-6-205(3) and (4)." The circuit court entered two orders on December 17, 2013, one granting the Attorney General's motion to intervene and the other granting Grandmother's request for enforcement. Mother's constitutional challenge to the TUCCJEA was denied in an order entered by the circuit court on January 8, 2014.

Mother and Father timely appealed the trial court's orders of registration and enforcement. On appeal, they argue: (1) that the Kentucky court lacked subject matter jurisdiction to enter its orders; (2) that the circuit court erred in registering and enforcing the Kentucky order under the TUCCJEA; (3) that registration and enforcement of the Kentucky order violates their rights under Article I, Section 8 and Article II, Section 2 of the Tennessee Constitution; (4) that Tennessee Code Annotated § 36-6-306 (2014) is the sole remedy for grandparent visitation in Tennessee where a grandparent has an existing order from a foreign jurisdiction; and (5) that Tennessee Code Annotated § 36-6-306(a)(4) requires a hearing on the issue of substantial harm to the child prior to the enforcement of a foreign grandparent visitation order regardless of whether that order is registered in Tennessee.

## II. ANALYSIS

We review a trial court's findings of fact de novo upon the record, with a presumption of correctness, unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d); *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013). Visitation decisions often hinge on determinations of witness credibility, which are afforded

---

3 The amended order seems to have been entered to correct a previous order granting registration and enforcement of the Kentucky order in which Father was referred to as "David." Other than the correction to Father's name, the two orders are identical.

considerable deference. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007); *Lovlace*, 418 S.W.3d at 16. Therefore, we will not reverse on an issue that hinges on witness credibility unless there is clear and convincing evidence "other than the oral testimony of witnesses which contradict the trial court's findings." *In re M.L.P.*, 228 S.W.3d at 143 (quoting *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990)). "Review of a trial court's determinations on issues of law, such as the existence of subject matter jurisdiction and statutory construction, is de novo, without any presumption of correctness." *Lovlace*, 418 S.W.3d at 16; *see also Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006).

### A.  Jurisdiction of the Kentucky Court to Issue the Grandparent Visitation Order

Initially, Mother and Father contend that the Kentucky court lacked jurisdiction to issue a grandparent visitation order. This amounts to a collateral attack4 on the Kentucky court's order, which we generally do not allow. We normally require that "a court order [ ] be given full effect, regardless of whether it was entered in error, unless [ ] a party obtains dissolution of the order through operation of the judicial system of review." *In re Estate of Rinehart*, 363 S.W.3d 186, 189 (Tenn. Ct. App. 2011) (internal quotations omitted). Such an attack is permissible only where the order in question is void. *Lovlace*, 418 S.W.3d at 19; *Rinehart*, 363 S.W.3d at 190. "[A] . . . decree is void and subject to collateral attack only where the trial court lacks general jurisdiction of the subject matter, rules on an issue wholly outside of the pleadings, or lacks jurisdiction over the party complaining." *Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996); *see also Lovlace*, 418 S.W.3d at 19; *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955) (concluding that in the absence of subject matter jurisdiction, a court cannot enter a valid, enforceable order).

Because Mother and Father's collateral attack goes to the subject matter

---

4 "'A collateral attack is defined as an attempt to avoid, defeat, or evade a judgment, or to deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it.'" *Lovlace*, 418 S.W.3d at 19 (quoting *Andrews v. Fifth Third Bank*, 228 S.W.3d 102, 107 (Tenn. Ct. App. 2007)). Furthermore:

> If an action or proceeding is brought for the very purpose of impeaching or overturning a judgment, it is a direct attack upon it. . . . On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important, or even necessary to its success, then the attack upon the judgment is collateral.

*Gentry v. Gentry*, 924 S.W.2d 678, 680 n.3 (Tenn. 1996).

jurisdiction of the Kentucky court,[5] we may consider the issue. Tennessee Code Annotated § 36-6-229(d)(1), the TUCCJEA provision dealing with registration of foreign custody orders, also permits us to examine whether the foreign court issuing the custody order had jurisdiction to do so prior to registration. Tenn. Code Ann. § 36-6-229(d)(1).

The Kentucky court found that Mother, Father, and the children still resided in Kentucky when Grandmother filed her petition for visitation on August 30, 2011. Nonetheless, Mother and Father argue that the Kentucky court lost jurisdiction to make a visitation determination after they moved to the State of Tennessee, or at the very latest, after making an "initial custody determination" through its September 11, 2012 temporary visitation order. To decide this issue, we must turn to the Kentucky version of the UCCJEA.

Kentucky's version of the UCCJEA, codified at Kentucky Revised Statutes Annotated §§ 403.800–880 (2006), is implicated where a Kentucky trial court adjudicates a visitation issue, and the parents and children at issue all live outside of the Commonwealth of Kentucky. *See McQuade v. McQuade*, No. M2010-00069-COA-R3-CV, 2010 WL 4940386, at *5 (Tenn. Ct. App. Nov. 30, 2010) (citing Janet L. Richards, 155 *Richards on Family Law* § 7-3(b) (2d ed. 2004)) (applying a similar analysis to a question of Tennessee law). The UCCJEA governs initial child custody determination proceedings as well as proceedings to modify custody. *See* Ky. Rev. Stat. Ann. §§ 403.822, 403.824.

Kentucky Revised Statutes Annotated § 403.822 (2006) governs jurisdiction to make an initial child custody determination. It states, in pertinent part, that:

(1) Except as otherwise provided . . . a court of this state shall have jurisdiction to make an initial child custody determination only if:

-

---

5 Father also argues that the Kentucky court lacked personal jurisdiction over him. Kentucky Revised Statutes Annotated § 403.822(3) expressly states: "Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination." Ky. Rev. Stat. Ann. § 403.822(3) (2006). Because we conclude that the Kentucky court had jurisdiction to make an "initial child custody determination" under Kentucky Revised Statutes Annotated §403.822, Father's argument lacks merit.

(a)	This state is the home state[6] of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent[7] continues to live in this state . . .

Ky. Rev. Stat. Ann. § 403.822(a) (footnotes added).

Because the Kentucky court's September 11, 2012 temporary visitation order constitutes an "initial child custody determination"[8] under the Kentucky UCCJEA, we must also determine whether the Kentucky court had jurisdiction to modify visitation through its March 4, 2013 final visitation order. Kentucky Revised Statutes Annotated § 403.824 (2006) governs a court's exclusive, continuing jurisdiction to modify a custody order made in that court. It provides, in pertinent part:

---

[6]
 "Home state" is defined, in pertinent part, as:

> [T]he state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period.

Ky. Rev. Stat. Ann. § 403.800(7) (2006).

[7]
 "Person acting as a parent" means a person, other than a parent, who:

> (a) Has physical custody of the child or has had physical custody for a period of six (6) consecutive months, including any temporary absence, within one (1) year immediately before the commencement of a child custody proceeding; and
>
> (b) Has been awarded legal custody by a court or claims a right to legal custody under the law of this state.

Ky. Rev. Stat. Ann. § 403.800(13). Grandmother does not fit the definition provided by the statute; therefore, she does not qualify as a person "acting as a parent" under the Kentucky UCCJEA.

[8] An "initial determination" is defined by Kentucky statute simply as "the first child custody determination concerning a particular child." Ky. Rev. Stat. Ann. § 403.800(8). "Child custody determination" is defined, in turn, as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes permanent, temporary, initial, and modification orders. The term does not include an order relating to child support or other monetary obligation of an individual." Ky. Rev. Stat. Ann. § 403.800(3). Therefore, the Kentucky court's September 11, 2012 temporary grandparent visitation order is likely an "initial child custody determination" even though it is not a permanent or final order.

7

(1)  Except as otherwise provided . . . a court of this state which has made a child custody determination consistent with KRS 403.822 . . . has exclusive, continuing jurisdiction over the determination until:

(a)  A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(b)  A court of this state or a court of another state determines that the child, the child's parents, and any other person acting as a parent do not presently reside in this state.

(2)  A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under KRS 403.822.

Ky. Rev. Stat. Ann. § 403.824.

Under the terms of the statute, the Kentucky court lost exclusive, continuing jurisdiction to modify its September 11, 2012 temporary visitation order when both the Kentucky and Tennessee courts determined that neither Mother, Father, nor their children continued to reside in Kentucky.  However, under Kentucky Revised Statutes Annotated § 403.824(2) the Kentucky court would have retained jurisdiction to modify its temporary order.  *See* Ky. Rev. Stat. Ann. §§ 403.824(2), 403.822(1)(a).  The petition for grandparent visitation resulting in the final order was filed in the Kentucky court on August 30, 2011, the date which the Kentucky court found that Mother, Father, and the children were still living in Bowling Green, Kentucky.9  Therefore, as the children's home state "on the date of the commencement of the proceeding," the Kentucky court retained jurisdiction to enter its March 4, 2013 final order, even though it served as a modification of the September 11, 2012 temporary order and the family moved before the conclusion of the proceedings.  Ky. Rev. Stat. Ann. § 403.822(1)(a).

This analysis is consistent with our interpretation of the TUCCJEA, as announced in *McQuade v. McQuade*, No. M2010-00069-COA-R3-CV, 2010 WL 4940386 (Tenn. Ct. App. Nov. 30, 2010).  *McQuade*, 2010 WL 4940386, at *6-9.  While *McQuade* is an

---

9 Although Mother and Father contend that the Kentucky court erred in making this finding, the record before us is insufficient to reach a contrary finding.

interpretation of Tennessee law, and thus not decisive of the issue before us, it is highly persuasive because the TUCCJEA has substantially the same language as the Kentucky version and both are derived from the same Model Act. *Compare* Ky. Rev. Stat. Ann. § 403.822, *with* Tenn. Code Ann. § 36-6-216; *compare* Ky. Rev. Stat. Ann. § 403.824, *with* Tenn. Code Ann. § 36-6-217. In *McQuade* we found the Tennessee trial court lacked jurisdiction to modify a custody order where the petition for modification was filed after the parents and child had moved away from the State of Tennessee. *See McQuade*, 2010 WL 4940386, at *10. Here, however, the petition for grandparent visitation—resulting in the permanent visitation order—was filed on August 30, 2011, prior to Mother, Father, and the children moving to Tennessee.

Mother and Father cite *Button v. Waite*, 208 S.W.3d 366 (Tenn. 2006), for the proposition that a court can lose jurisdiction over the parties if they move out-of-state before the court renders it decision. This is a misapplication of *Button*. Under *Button* and *McQuade*, new proceedings, including those for modification, may not be initiated in a state court after a determination has been made that the parties no longer live in that state. *Button*, 208 S.W.3d at 371; *McQuade*, 2010 WL 4940389, at *8.

Therefore, we conclude that the Kentucky court properly exercised its jurisdiction under Kentucky Revised Statutes Annotated §§ 403.822 and 403.824 when it entered its September 11, 2012 temporary order and its March 4, 2013 final order. Next, we consider whether the trial court properly recognized the Kentucky grandparent visitation orders.

## B. Applicability of the TUCCJEA

We turn to our own law to determine whether the TUCCJEA allows for the registration and enforcement of foreign grandparent visitation orders. Mother and Father argue that the TUCCJEA does not support the registration and enforcement of foreign grandparent visitation orders for two reasons: (1) the definition of "child custody proceeding" in the TUCCJEA excludes proceedings seeking enforcement of grandparent visitation orders; and (2) the Tennessee Grandparent Visitation Statute, Tennessee Code Annotated § 36-6-306, is the sole remedy for grandparents seeking visitation under a foreign order. These are questions of statutory interpretation subject to de novo review. *Lovlace*, 418 S.W.3d at 16. We address each in turn.

When called upon to answer a question of statutory interpretation, our goal "'is to carry out legislative intent without broadening or restricting the statute beyond its intended scope.'" *Harris v. Haynes*, 445 S.W.3d 143, 146 (Tenn. 2014) (quoting *Johnson*

*v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013)).  We start by looking to the language of the statute, and if it is unambiguous, we apply its plain meaning and look no further.  *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 517 (Tenn. 2014); *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013).  In doing so, we must avoid any "'forced or subtle construction that would limit or extend the meaning of the language.'"  *Keen v. State*, 398 S.W.3d 594, 610 (Tenn. 2012) (quoting *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)).  Only when the language of a statute is ambiguous do we turn to the broader statutory scheme, legislative history, or other sources for clarity in meaning.  *Thurmond*, 433 S.W.3d at 517.  A statute is ambiguous where it "'can reasonably have more than one meaning.'"  *Brundage v. Cumberland Cnty.*, 357 S.W.3d 361, 365 (Tenn. 2011) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010)).

The TUCCJEA, Tennessee Code Annotated §§ 36-6-201–243, was adopted in Tennessee in 1999.  1999 Tenn. Pub. Acts 881-898 (ch. 389).  Tennessee Code Annotated § 36-6-229 (the "registration provision") provides that a "child-custody determination issued by a court of another state may be registered in this state, with or without a simultaneous request for enforcement," provided certain requirements are met.  Tenn. Code Ann. § 36-6-229(a).  A "child custody determination," in turn, is defined in pertinent part as an "order of a court providing for . . . visitation with respect to a child."  Tenn. Code Ann. § 36-6-205(3).  This broad language would seem to include a grandparent visitation order, especially in light of the statutory command that we provide the TUCCJEA a liberal interpretation promoting its underlying purposes and policies, which are to:

> (1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
>
> (2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;
>
> (3) Discourage the use of the interstate system for continuing controversies over child custody;
>
>     . . . .

2

(5) Avoid relitigation of custody decisions of other states in this state; and

(6) Facilitate the enforcement of custody decrees of other states.

Tenn. Code Ann. § 36-6-202 (2014).

The Tennessee Grandparent Visitation Statute is organized under part 3 of Title 36, Chapter 6, but it is not part of the TUCCJEA. *See* Tenn. Code Ann. § 36-6-306. The Grandparent Visitation Statute was originally enacted in 1997. 1997 Tenn. Pub. Acts 918-920 (ch. 503). However, the Grandparent Visitation Statute was revised in 2000 in light of our Supreme Court's decision in *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993), which recognized parents' superior parental rights, under Article I, Section 8 of the Tennessee Constitution, over non-parents seeking custody. 2000 Tenn. Pub. Acts 2649-2652 (ch. 891); *see also Hawk*, 855 S.W.2d at 577, 582. Our Supreme Court held in *Hawk* that:

> Article I, Section 8 of the Tennessee Constitution protects the privacy interest of these parents in their child-rearing decisions, so long as their decisions do not substantially endanger the welfare of their children. Absent some harm to the child, we find that the state lacks a sufficiently compelling justification for interfering with this fundamental right.

*Hawk*, 855 S.W.2d at 582.

Unlike the TUCCJEA, the Grandparent Visitation Statute specifically references foreign grandparent visitation orders. As revised, it reads in pertinent part:

> (a) Any of the following circumstances, when presented in a petition for grandparent visitation . . . necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents:
>
>      . . . .
>
> (4) The court of another state has ordered grandparent visitation;
>
>      . . . .
>
> (b)(1) In considering a petition for grandparent visitation, the court shall first

3

determine the presence of a danger of substantial harm to the child. Such finding of substantial harm may be based upon cessation of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:

(A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;

(B) The grandparent functioned as a primary caregiver such that cessation of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or

(C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

Tenn. Code Ann. § 36-6-306(a)(4), (b)(1). Although Grandmother could have proceeded under the Grandparent Visitation Statute, the court would have been required to make a threshold determination of substantial harm to the children. Tenn. Code Ann. § 36-6-306(b)(1).

## 1. The definition of "child custody proceeding" under the TUCCJEA

Mother and Father argue that a foreign grandparent visitation proceeding is excluded from the TUCCJEA's definition of a "child custody proceeding." Therefore, no "child custody determination" may arise from such proceedings. They rely on the plain language of Tennessee Code Annotated § 36-6-205(4) (2014), which defines a "child custody proceeding" as:

[A] proceeding in which legal custody, physical custody, or visitation with respect to a child is in issue. "Child custody proceeding" includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear. "Child custody proceeding" *does not include* a proceeding involving juvenile delinquency, contractual emancipation, or *enforcement under part 3 of this chapter*.

4

Tenn. Code Ann. § 36-6-205(4) (emphasis added). As noted above, part 3 of Chapter 6 includes the Grandparent Visitation Statute, Tennessee Code Annotated § 36-6-306. Therefore, on its face, the definition of "child custody proceeding" under the TUCCJEA would seem to exclude grandparent visitation proceedings.

In response, Grandmother argues that the TUCCJEA requires Tennessee courts to recognize and enforce a "child custody determination" of another state. Tenn. Code Ann. § 36-6-229(a). The definition of "child custody determination" includes an order for "visitation with respect to a child." Tenn. Code Ann. at § 36-6-205(3). This apparent contradiction in the statute creates an ambiguity that we must resolve.

In seeking resolution of this ambiguity, we turn to the Model Act from which the TUCCJEA is derived. Our Legislature has directed us to seek guidance from the Model Act and its commentary. Tenn. Code Ann. § 36-6-203 (2014). The language of the Model Act defining "child custody proceeding" is almost identical to the TUCCJEA:

> [A] proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear. The term does not include a proceeding involving juvenile delinquency, contractual emancipation, or enforcement under [Article] 3.

Unif. Child Custody Jurisdiction & Enforcement Act § 102(4) (1997) [hereinafter UCCJEA].

Although the statutes contain nearly identical language, they cross-reference entirely different substantive provisions. *Compare* UCCJEA §§ 301–317; *with* Tenn. Code Ann. §§ 36-6-301–308. Article 3 of the Model Act covers proceedings for enforcement under the Hague Convention, UCCJEA § 302, registration of child-custody determinations from other states, *id.* § 305, enforcement of registered determinations, *id.* § 306, and various other subjects, but it makes no mention of grandparent visitation proceedings. *See id.* §§ 301–317. The TUCCJEA has no P+art 3. Part 3 of Title 36, Chapter 6 of the Tennessee Code Annotated, which the TUCCJEA definition of "child custody proceeding" seemingly references, contains provisions governing grandparent rights, Tenn. Code Ann. § 36-6-302, stepparent visitation, Tenn. Code Ann. § 36-6-303, grandparent visitation, Tenn. Code Ann. § 36-6-306, and other visitation matters. *See* Tenn. Code Ann. §§ 36-6-301–308. The TUCCJEA does have substantially similar provisions as Article 3 of the Model Act, but they are located at Tennessee Code

5

Annotated §§ 36-6-226-241.

Although we normally interpret the words of a statute by their plain language, it is well-settled that we will disregard an apparent mistake. *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001); *State v. Temple*, 220 S.W. 1084, 1086 (Tenn. 1920). In such an instance, we may refer to other parts of the statute to seek clarity in meaning. *Temple*, 220 S.W. at 1086. This rule is especially pertinent when dealing with a numerical cross-reference in a statute. *See Chickasaw*, 534 U.S. at 94.

We conclude that our Legislature did not intend to exclude grandparent visitation proceedings from the TUCCJEA's definition of "child custody proceeding." Even though the plain language of the TUCCJEA provision discusses "enforcement under part 3 of this chapter," a closer review reveals that the statute is meant to reference Tennessee Code Annotated §§ 36-6-226–241. This conclusion is supported by the official commentary to the TUCCJEA and the Model Act, both of which contain identical language explaining the exclusion of Article 3 enforcement proceedings from the definition of "child custody proceeding":

> The definition of "child-custody proceeding" has been expanded from the comparable definition in the UCCJA. . . . Cases involving the Hague Convention on the Civil Aspects of International Child Abduction have not been included at this point because custody of the child is not determined in a proceeding under the International Child Abductions Remedies Act. Those proceedings are specially included in the Article 3 enforcement process.

Tenn. Code Ann. § 36-6-205 cmt.; UCCJEA § 102 cmt. From this commentary, it becomes apparent that our Legislature meant to exclude proceedings conducted under Tennessee Code Annotated §§ 36-6-221–241 from the definition of "child custody proceeding," not grandparent visitation issues under Tennessee Code Annotated § 36-6-306.

## 2. The TUCCJEA and Grandparent Visitation Statute

Nevertheless, we still must determine whether a foreign grandparent visitation order may be registered and enforced under the TUCCJEA registration provision, Tennessee Code Annotated § 36-6-229, or if visitation must be sought under the Tennessee Grandparent Visitation Statute, Tennessee Code Annotated § 36-6-306. To

6

answer this question, we turn to canons of statutory construction. These canons, although helpful, must always be tested against other interpretive tools at the court's disposal. *In re Estate of Tanner,* 295 S.W.3d 610, 624 n.13 (Tenn. 2009). The canons are not mandatory, and they "'need not be conclusive.'" *Chickasaw*, 534 U.S. at 94 (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001)). Rather, they are designed to help us determine the Legislature's intent in adopting particular statutory language. *Id.*

Two canons support a construction of the TUCCJEA that would allow for registration and enforcement of foreign grandparent visitation orders. It is well-settled that we may turn to a statute's preamble and policy statements for guidance when seeking to resolve an ambiguity. *See Hyatt v. Taylor*, 788 S.W.2d 554, 556 (Tenn. 1990); *Harrell v. Hamblen Cnty. Quarterly Court*, 526 S.W.2d 505, 508 (Tenn. Ct. App. 1975). Tennessee Code Annotated § 36-6-202 directs us to broadly and liberally construe the TUCCJEA in light of its purposes which include: (1) avoiding jurisdictional competition; (2) discouraging the misuse of our interstate system; (3) avoiding relitigation of custody determinations made by other states; and (4) facilitating the enforcement of other states' custody decrees. Tenn. Code Ann. § 36-6-202. Each of these purposes would seem to encourage the inclusion of foreign grandparent visitation orders within the ambit of the TUCCJEA.

The statutory definition of "child custody determination" also supports such a construction. Tenn. Code Ann. § 36-6-205(4). We turn to a statute's definitions section when seeking to ascertain the meaning of a particular word or phrase. *See Fox Std. Oil Co. of New Jersey*, 294 U.S. 87, 96 (1935); *Dunn v. Archer*, 265 S.W. 678, 679 (Tenn. 1924). Under the TUCCJEA, a "child custody determination" includes a court order for "visitation with respect to a child." Tenn. Code Ann. § 36-6-205(4). This definition is certainly broad enough to include a foreign grandparent visitation order.

However, three countervailing canons of statutory construction convince us that the Legislature intended to require grandparents seeking visitation rights in Tennessee to utilize the Grandparent Visitation Statute rather than the TUCCJEA registration provision. First, where a conflict is present, "a more specific statutory provision takes precedence over a more general provision." *Lovlace*, 418 S.W.3d at 20. The TUCCJEA registration provision applies to an order providing for "visitation with respect to a child," a broader and more general reference than the Grandparent Visitation Statute's specific reference to where "[t]he court of another state has ordered grandparent visitation." *See* Tenn. Code Ann. §§ 36-6-205(3), -229, -306. Because the Grandparent Visitation Statute is specifically applicable to instances of grandparent visitation, it overrides the TUCCJEA

7

registration provision where the two conflict.

Second, we assume the Legislature is aware of its prior enactments; therefore, as a general rule, a more recent enactment will take precedence over a prior one to the extent of any inconsistency between the two. *See Hayes v. Gibson Co.*, 288 S.W.3d 334, 337 (Tenn. 2009); *see also Lovlace*, 418 S.W.3d at 20; *Davis v. State*, 313 S.W.3d 751, 762 (Tenn. 2010). However, "new statutes change pre-existing laws only to the extent expressly declared," and a statute "not repealing directly or by implication any previous law, is cumulative to such law." *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013). Repeal by implication is disfavored. *Id.* Although the Grandparent Visitation Statute was originally enacted in 1997, it was updated to comply with State constitutional requirements in 2000 and, therefore, is the more recently adopted statute. 2000 Tenn. Pub. Acts 2649-2652 (ch. 891). This lends further weight to application of the Grandparent Visitation Statute where the two conflict. Furthermore, as the TUCCJEA has never been held to apply to foreign grandparent visitation orders in Tennessee, a holding that the Grandparent Visitation Statute precludes its application to such orders would not constitute an implied repeal.

Finally, when faced with two equally plausible interpretations, one of which poses constitutional concerns, the canon of constitutional avoidance directs us to adopt the other interpretation. *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005). Importantly, we do not apply this canon to adjudicate constitutional issues that were deemed waived by the circuit court. *See id.* at 381. Rather, the canon permits us to avoid constitutional questions by "resting on the reasonable presumption that [the Legislature] did not intend the alternative which raises serious constitutional doubts." *Id.*

As noted above, Article I, Section 8 of the Tennessee Constitution requires that a finding of substantial endangerment be made before a non-parent can overcome the presumption of superior parental rights. *Hawk*, 855 S.W.2d at 582. Application of the TUCCJEA registration provision to grandparent visitation presents serious constitutional concerns. Tennessee Code Annotated § 36-6-229 does not provide adequate constitutional protection to our citizens—it does not require a court to find a substantial risk of harm to the child prior to registration and enforcement of a foreign grandparent visitation order. Tenn. Code Ann. § 36-6-229. It also does not require the foreign court to have made such a finding. *Id.* The Grandparent Visitation Statute, however, has been revised to explicitly require that a Tennessee court determine whether there is a risk of substantial harm to the child. Tenn. Code Ann. § 36-6-306(b)(1). Only then may the court proceed to consider whether grandparent visitation is in the child's best interest.

8

Tenn. Code Ann. § 36-6-306(c).

Because registration of a foreign grandparent visitation order that does not comply with our State's constitutional guarantees would present serious concerns, we conclude that the TUCCJEA registration provision does not apply to foreign grandparent visitation orders. We are aware of three states that have arrived at the opposite conclusion, at least implicitly, by applying the UCCJEA to grandparent visitation orders. *See Daniels v. Barnes*, 658 S.E.2d 472 (Ga. Ct. App. 2008); *G.P. v. A.A.K.*, 841 So. 2d 1252 (Ala. Civ. App. 2002); *Schumacher v. Steen*, No. 294593, 2010 WL 3389740 (Mich. Ct. App. Aug. 26, 2010). On the other hand, two other states—Montana and Louisiana—have both concluded that the UCCJEA does not apply to grandparent visitation orders. *See Burst v. Schmolke*, 62 So. 3d 829, 836 (La. Ct. App. 2011) (finding that in order for grandparents to take advantage of the Louisiana UCCJEA, they must be persons "acting as a parent" under the Act); *Stewart v. Evans*, 136 P.3d 524 (Mont. 2006).

We find the decisions applying the UCCJEA to foreign grandparent visitation proceedings unpersuasive. In *Schumacher v. Steen*, No. 294593, 2010 WL 3389740 (Mich. Ct. App. Aug. 26, 2010), the Michigan Court of Appeals found that the UCCJEA applied to grandparent visitation proceedings based on the broad language defining "child custody determination" and "child custody proceeding" in its version of the UCCJEA. *Schumacher*, 2010 WL 3389740, at *5. While the plain language of the TUCCJEA would also support such a reading, it would fail to take into account the constitutional protections offered by Article I, Section 8 of the Tennessee Constitution to Tennessee citizens. *Daniels v. Barnes*, 658 S.E.2d 472 (Ga. Ct. App. 2008), and *G.P. v. A.A.K.*, 841 So. 2d 1251 (Ala. Civ. App. 2002), are likewise unpersuasive. In neither case did the court consider whether a higher presumption of parental rights under the state's constitution prevented the court from interpreting the statute based solely on its plain language. *Daniels*, 658 S.E.2d at 474-475; *G.P.*, 841 So. 2d at 1255. These constitutional concerns were not addressed in those cases, and so we do not rely on them here.

Furthermore, our review of these states' grandparent visitation statutes reveals that they do not explicitly apply to a situation where a grandparent has a foreign visitation order, unlike Tennessee's statute. *Compare* Tenn. Code Ann. § 36-6-306(a)(4), *with* Ala. Code § 30-3-4.1 (2011) (*declared unconstitutional by L.T. v. J.D.*, 109 So. 3d 652 (Ala. Civ. App. 2012)), Ga. Code Ann. § 19-7-3 (2009), *and* Mich. Comp. Laws Ann. § 722.27b (2011). This lack of an alternative avenue for recognizing grandparent visitation rights is another reason for disregarding other states' interpretations of their versions of

9

the UCCJEA.

Because the circuit court erred in utilizing the TUCCJEA to register and enforce a foreign grandparent visitation order, it is unnecessary for us to address the remaining issues raised by Mother and Father.

### III. CONCLUSION

The trial court's orders registering and enforcing the Kentucky orders is reversed and remanded for further proceedings consistent with this opinion. Costs of this appeal shall be taxed to Appellee, Flora Stuart, for which execution shall issue, if necessary.

_____
W. NEAL McBRAYER, JUDGE